Cook and Others *v.* The State on the relation of Patterson.

Under the statute of 1843, a suit might be maintained upon an official bond which had not been properly approved by the county board, if the defect was properly suggested in the pleadings.

A copy of the bond and the defective approval filed with, and made part of, the complaint, is a sufficient suggestion of such defect.

Suit upon the official bond of a county treasurer. The condition of the bond was, that the treasurer should pay over, according to law, all money that should come into his hands. The Court instructed the jury as follows: "If *Cook*, at the expiration of his first term, was a defaulter, and, being his own successor, used funds that came to his hands during his second term,

Nov. Term,
1859.

COOK
v.
THE STATE.

*Wednesday,*
*November* 30.

to pay the balance against him at the end of his first term, the sureties in the first bond are discharged, and the sureties in the second bond are liable for the money thus appropriated." *Held,* that the instruction was correct.

APPEAL from the *Knox* Circuit Court.

DAVISON, J.—This was an action against *Cook*, late treasurer of *Knox* county, and his sureties, on his official bond. The bond is dated *November* 18, 1852, is in the penalty of 50,000 dollars, and is conditioned as follows:

"If the said *John M. Cook*, who has been elected treasurer, &c., will pay over, according to law, all moneys which shall come into his hands for state, county, or other purposes, and faithfully discharge the duties of his office, during the term for which he has been elected, and [during his] continuance in office, and at the expiration of such term, deliver to his successor in office all public moneys, books, accounts, &c., belonging to the office, and which may be in his possession by virtue thereof, then the obligation was to be void," &c.

This bond, having been duly signed and sealed by *Cook*, and each of his sureties, was approved in this form:

"We, the undersigned, county commissioners of *Knox* county, and state of *Indiana*, do hereby approve of the above bond and security.

"*Andrew Gordon*,
"*William Junkin*."

The complaint avers that *Cook* has not paid over, according to law, all moneys which came into his hands as treasurer, &c., for state, county, and other purposes, and that there is now in his hands, 4,000 dollars, which he received as treasurer, while acting as such under said bond, which is due, and which he has wholly failed and refused to pay over, &c. And, further, it is averred that *Cook* did not, at the expiration of his term of office for which he had been elected, deliver up to his successor in office, all public moneys, books, &c., belonging to said office, and which were in his possession by virtue thereof, although his successor duly demanded the same, &c.

*Cook* answered by a general denial. The other defend-

ants, the sureties, in their answer, set up, 1. That the bond in suit was not received and approved by the board of commissioners, as required by the statute. 2. That *Cook* was duly elected treasurer, &c., his term of office commencing *November* 15, 1852, and ending on the 15th of *November*, 1854, or as soon thereafter as his successor in office should be elected and qualified; that the instrument sued on is his official bond, executed by them, as his securities for said term, which term expired *November* 15, 1854, and his, *Cook's*, successor having been duly elected, was, on said day, duly qualified, &c. And defendants aver that said *Cook* has fully paid over to his successor in office all the money which came to his hands, as treasurer, during his said term of office, &c.

Demurrer to the first special defense sustained; and to the second, the plaintiff replied, "that *Cook* did not pay over, &c., but on the contrary, has failed and refused so to pay, &c., and still has in his hands 4,000 dollars, as alleged in the complaint.

Verdict in favor of the plaintiff for 2,180 dollars. New trial refused, and judgment.

The first inquiry relates to the approval of the bond. The demurrer admits that it was not received and approved by the board of commissioners, as required by law. Hence, it is insisted that the sureties are not liable. We think otherwise. The statutes of 1843, under which the bond, in this case, was executed, provide that whenever any official bond shall not contain the substantial matter, &c., required by law, or there shall be any defect in the approval or filing thereof, such bond shall not be void, so as to discharge the officer and his sureties, but they shall be bound to the state or party interested; and the state, or such party, may, by action at law, suggest the defect of such bond, or of such approval or filing, and recover his proper demand or damages from such officer, and the persons who intended to become, and were included as, sureties in such bond. R. S. 1843, p. 110, § 98. See, also, 1 R. S. p. 167, § 12.

In this instance, the defect is, that the bond was not ap-

proved by the board of commissioners while in session, but simply by two persons who style themselves "commissioners of *Knox* county." Now, if this defect is properly suggested, the statutory provisions to which we have referred apply to the case at bar. The defect, it is true, is not affirmatively averred in the complaint; but the bond, and its defective approval, are set forth in the record. Both were filed with the complaint, and, therefore, constitute a part of that pleading. 2 R. S. p. 44, § 78.—12 Ind. R. 187.

Thus, the defect in the approval seems to be sufficiently shown by the complaint, and the result is, the defense to which the demurrer applies, is not available.

The record contains a bill of exceptions, which shows, that prior to *November* 15, 1852, the date of the bond, *Cook* had been treasurer of *Knox* county, and having been re-elected his own successor, was on that day duly qualified for a second term of two years, then commencing, and ending *November* 15, 1854, or as soon thereafter as his successor in office should be elected and qualified; that one *Williamson*, who was elected *Cook's* successor, was qualified on the 20th of *November*, 1854, and obtained possession of the office on the 10th of *January*, 1855, and that *Cook*, by writ of replevin, on the 18th of that month, recovered possession of the same office, and held it for some time; that on the 1st of *June*, 1852, *Cook*, then being treasurer for his first term, made his annual report to the commissioners, admitting that there was then in his hands, 3,262 dollars, 89 cents, and on the first of *June*, 1853, after the commencement of his second term, he reported thus: "There was on hand at the last settlement, 3,262 dollars, 89 cents. Receipts since that time, 21,297 dollars, 18 cents. Credit payments, 17,898 dollars, 61 cents. Balance in treasury, *June* 1, 1853, 6,661 dollars, 41 cents;" that on the first of *June*, 1854, he made a statement commencing with the balance on hand at the last settlement, and showing receipts since the first of *June*, 1853, of 15,113 dollars, 38 cents, and payments to the amount of 15,274 dollars, 13 cents, leaving a balance on hand, *June* 1, 1854, of 2,816 dollars, 64 cents; that there was also another report made

by *Cook*, June 1, 1855, showing a balance against himself of 3,024 dollars, 40 cents, and a statement of his entire account, as treasurer, produced on the trial, and proved to be correct, up to the commencement of this suit, showed him to be in default, 2,180 dollars.

Thus far, the evidence shows that the balance, 3,262 dollars, 80 cents, reported *June* 1, 1852, while *Cook* was in office during his first term, was carried forward, and contributed in the production of the amount embraced in the verdict. This result, in the absence of other evidence, would have been unobjectionable; because *Cook*, having in *June*, 1852, charged himself with the then reported balance, the jury would have had a right to infer that that balance was in his hands when the bond in suit was executed, and he had entered upon his second term of office. But one *McGee*, a witness, testified, that in 1852, 1853, and 1854, he was assistant auditor; that at the *June* settlement, 1852, *Cook* had not the money for the balance in the treasury, and was a defaulter; and that during the summer and fall following, there was only a small amount of money paid into the treasury. On cross-examination, however, the witness modified his previous testimony thus: "*Cook* had not the money before the commissioners to be counted, and told witness that he had not the money, and, therefore, he, witness, stated *Cook* was a defaulter."

This evidence, it is insisted, proves *Cook* a defaulter at the time he made his report in *June*, 1852, to the amount then reported in his hands as treasurer, and if he was, the verdict cannot be sustained; because it would make the sureties sued in this action liable for a default in their principal which occurred before they became bound for a proper discharge of his duties. But the jury, in view of all the evidence, have, in effect, decided that he was not a defaulter prior to his second term, and we are not inclined to disturb that decision. Indeed, the testimony of *McGee*, relied on by the appellant, is not, in our judgment, decisive as proof, that *Cook* was a defaulter in *June*, 1852. He may not, when he made his report, have had the money before the commissioners to be counted, and still it may

have been in his hands when he entered upon his second <span>Nov. Term, 1859.</span> term of service, and thus the defendants, as his sureties, liable for its appropriate payment, in accordance with the condition of the official bond.

The Court, at the instance of the plaintiff, charged thus:

"If *Cook*, at the expiration of his first term, was a defaulter, and, being his own successor, used funds that came to his hands during his second term, to pay the balance against him at the end of his first term, the securities in the first bond are discharged, and the sureties in the second bond are liable for the money thus appropriated."

This instruction was made the subject of an exception, and the giving of it is alleged to have been erroneous. We are not of that opinion. The condition of the bond is, that the treasurer "will pay over, according to law, all moneys which shall come into his hands," &c. And it must be conceded that he could not legally use funds collected by him as treasurer, during his second term, in the discharge of a default existing at the end of his first term. The instruction seems to be pertinent to the case made by the record, and was, therefore, properly given.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

*S. Judah*, for the appellants.