Hunt *et al. v.* The State, *ex rel.* Edger, Auditor.

Filed Jan. 30, 1884.

———————◆———————

No. 9381.

HUNT ET AL. *v.* THE STATE, EX REL. EDGER, AUDITOR.

COUNTY TREASURER.—*Suit on Bond by County Auditor.—Complaint.—Abatement.*—A complaint by the State, on the relation of the county auditor, upon the bond of a county treasurer, for failure to pay over public money as required by law, which fails to allege that the relator was instructed to sue by the State Auditor or county commissioners as the statute, section 185, 1 R. S. 1876, p. 117, provides, is not bad on demurrer. The matter does not affect the merits, and if available it must be by answer in abatement.

SAME.—*Approval of Settlement by County Commissioners.—Estoppel.—Case Explained.*—One paragraph of a complaint on a county treasurer's bond, after alleging the facts relied on as a cause of action, anticipated the defence unnecessarily, by alleging that by fraud and mistake the board of county commissioners had approved the annual settlement as stated by the treasurer, and had afterwards revoked their order of approval.

*Held,* that an answer to the whole complaint, averring such settlement and approval by way of estoppel, was bad.

*Held,* also, that such settlement and approval is not a judicial act, but merely ministerial, and the act stands merely as an admission which

concludes nobody, precisely like a settlement between private persons. *Board, etc.,* v. *Saunders,* 17 Ind. 437, explained.

From the Randolph Circuit Court.

*W. W. Canada, L. W. Study* and *D. Turpie,* for appellants.
*W. A. Thompson, A. O. Marsh* and *J. W. Thompson,* for appellee.

NIBLACK, J.—Action by the State, on the relation of George N. Edger, auditor of Randolph county, against Harrison P. Hunt, late treasurer of that county, as principal, and Allen Golliher and twenty-six other persons as sureties, upon a county treasurer's bond.

The complaint was in three paragraphs. Each paragraph charged that Hunt, while in office, had received large sums of money belonging to the several funds under his control, which he had refused to pay over, or to account for, as required by law. The third paragraph, in addition, charged that Hunt, near the close of his term of office, made a false and fraudulent report of the amount of money in his hands to the board of commissioners of the county of Randolph, which the board were fraudulently induced to accept and approve, but which acceptance and approval had been, upon due notice, and before the commencement of this action, revoked and set aside. Demurrers for want of sufficient facts were filed to each paragraph of the complaint, and were overruled as to all of the paragraphs.

The defendants then answered in eight paragraphs. The first, third, fourth and seventh paragraphs, each in a slightly different form, pleaded the acceptance and approval of Hunt's report by the board of commissioners as an adjudication of the matters involved in, and hence in estoppel of, the action, and demurrers were sustained to each of those paragraphs.

The fifth paragraph was in general denial, and issue was joined upon the remaining paragraphs.

The court tried the cause, and at the request of the defendants made a special finding of the facts. This special find-

ing, with the conclusions of law thereon, may be summarized as follows: That the defendant Harrison P. Hunt, having been duly elected treasurer of Randolph county, entered upon the discharge of the duties of his office on the 8th day of September, 1875, and continued to serve as such treasurer for the term of two years; that, prior to entering upon the duties of his office, the said Hunt, with the other defendants as his sureties, executed the bond in suit, as his official bond, in the penal sum of $225,000; that on the 12th day of June, 1877, the said Hunt exhibited to and filed with the board of commissioners of the county of Randolph, his annual report, purporting to give, upon his oath, a summary of his official transactions as treasurer during the fiscal year commencing on the 1st day of June, 1876, and ending on the 31st day of May, 1877, and of the balances of moneys in his hands belonging to the different funds under his control on the last named day; that said board, after an examination thereof in open court, accepted and approved said report, and ordered it to be spread upon the record of their proceedings upon the assumption that it was the regular annual settlement of the said Hunt, as treasurer, with the board for the year to which it referred, and that it contained a correct statement of his transactions as such treasurer during that year; that considering the skill and great length of time which would have been required, it was impracticable for the board to examine all the books and papers necessary to a full understanding of all the matters to which reference was in general terms made in the report so submitted to them, and having no notice of any mistake therein, and believing the same to be in all things correct, the board relied alone upon its statements when they accepted and approved said report; that a short time prior to the time at which said report was submitted to the board of commissioners, one William D. Kiser, who was then auditor of the said county of Randolph, prepared a settlement sheet between him as auditor and the defendant Hunt as treasurer; that said Kiser, in making out said settlement sheet, acted

mainly upon information derived from official records, and from memorandums within his reach, receiving only slight personal assistance from Hunt, the treasurer; that the report submitted by Hunt to the board of commissioners was not prepared by him, but was written under his general direction by a person employed in his office; that the report, as to the particular matters in controversy, adopted the items and calculations contained in the settlement sheet made by Kiser; that in said settlement sheet two items of credit were allowed to Hunt, as follows:

"Second instalment unpaid . . . . . . . . . $62,315.86
Total delinquencies . . . . . . . . . . . . . 38,309.62."

That these items of credit were carried into the report; that of the amount of the second instalment for which Hunt so took credit in his report, $9,944.56 was for delinquent taxes, which was also included in the amount of total delinquencies, constituting, as has been seen, the next item of credit; that in this way Hunt received credit twice in his report for the sum of $9,944.56; that Hunt's aggregate receipts during the year ending May 31st, 1877, were $92,461.64; that his total disbursements during that period were only $82,517.08, leaving in his hands unaccounted for by his report, and which he has ever since retained, the above named sum of $9,944.56; that he had, at the time of the commencement of this suit, accounted for and paid over all moneys which had come into his hands as treasurer except this sum of $9,944.56; that about the 1st of September, 1877, the board of commissioners, for the first time, received information that the report of Hunt made to them, as herein above stated, did not give the true financial condition of the county at the time it was submitted; that on the 5th day of said month of September the commissioners caused a notice in writing to be served on Hunt, conveying to him the nature of the information which they had received, and informing him that on the 10th day of that month they would proceed to re-examine his said report, and to enquire whether, in fact, it was erroneous in any

of the respects to which their information extended; that Hunt failed to attend the meeting of the board of commissioners on the day lastly above named; that the board nevertheless proceeded on that day to re-examine said report, and to more particularly enquire into the accuracy of the same; that, as a result of such re-examination and enquiry, the board came to the conclusion that said report was materially inaccurate, and thereupon entered an order revoking and setting aside their former order accepting and approving the same, and ordering and instructing the relator herein, as the auditor of the county, to institute this action; that thereafter, and before the commencement of this suit, Hunt was notified of the inaccuracy of his report, and specially requested to pay over the amount of money still remaining in his hands; that for matters occurring subsequent to the time of filing his report Hunt was entitled to a further credit of $933.42, leaving a balance in his hands as money inadvertently, as above, unaccounted for at the time of the commencement of this action, that is to say, on the 12th day of September, 1877, the sum of $9,011.12; that there was due for interest at the time of the trial the sum of $1,528.77; that adding the sum of $901.11 for penalty due under the statute, there was due from Hunt, as the late treasurer of the county, the aggregate sum of $11,441.

Upon these facts the court came to the conclusion that the plaintiff was entitled to have judgment against Hunt and his sureties upon the bond described in the complaint for said sum of $11,441. The defendants excepted to the conclusion at which the court thus arrived, and in addition moved for judgment in their favor upon the special finding of facts upon the ground that the acceptance and approval of Hunt's report by the commissioners operated as, and was in fact, an adjudication in their favor of the matters in controversy. But that motion was overruled, and judgment was given against the defendants for the sum of $11,441, specified as above.

The first and second paragraphs of the complaint each failed to aver that the relator had been instructed, either by the auditor of state or the proper board of commissioners, to institute this suit, and for that reason it is claimed that the demurrers to both of those paragraphs ought to have been sustained.

The act of December 21st, 1872, contained sections as follows:

"Section 184.   If any such county treasurer shall refuse or neglect to pay over all moneys, as provided herein, he and his sureties shall be held liable to pay the full amount which he should have paid over, together with the interest and ten per centum damages.

"Section 185.   In any such case, the county auditor, on being instructed to that effect by the auditor of state, or by the board of county commissioners, shall cause suit to be instituted against such county treasurer and his sureties," etc.   1 R. S. 1876, p. 117.

Whether, in an action like this, an averment that the suit was instituted either by order of the auditor of state or of the board of commissioners, is, in any view, a material averment of the complaint, is a question we have not considered, and need not consider at the present hearing.   It is, in any event, a question which does not go to the merits of the action, and hence is not, as it was not in this case, raised by a demurrer for want of sufficient facts.   Judged from the standpoint afforded by analogous cases, the question is one which can only be presented by an answer in abatement.   *American Ins. Co. v. Wellman*, 69 Ind. 413, and authorities cited.

As we have observed, the third paragraph of the complaint set up affirmative matter in avoidance of the settlement made by Hunt with the board of commissioners.   While the practice of averring matters in the complaint in anticipation of some particular defence is not very usual, and may have encountered some unfavorable criticism, it is nevertheless permissible in cases like, or similar in principle to, the one made

by this third paragraph; that is to say, where such matters are connected with, and give greater force and effect to, the wrong complained of. *Chicago, etc., R. R. Co.* v. *West,* 37 Ind. 211; *DuPont* v. *Beck,* 81 Ind. 271.

The paragraphs of answer, setting up the commissioners' settlement with Hunt as an adjudication and an estoppel, purported to be pleaded as defences to the whole complaint. They were, however, clearly bad as answers to the third paragraph which had anticipated the defence presented by each one of them by averring fraud and mistake in the settlement. An answer, purporting to be a defence to the whole, but bad as to a part, of the complaint, is insufficient upon demurrer. *Louis* v. *Arford,* 21 Ind. 235; *Summers* v. *Vaughan,* 35 Ind. 323 (9 Am. R. 741); *Alvord* v. *Essner,* 45 Ind. 156; *Musselman* v. *Cravens,* 47 Ind. 1; *Allen* v. *Randolph,* 48 Ind. 496; *Douch* v. *Bliss,* 80 Ind. 316.

We need not, therefore, enquire whether these paragraphs of answer would have constituted good defences if they had been pleaded only to the first and second paragraphs of the complaint. It is enough for our present purpose to hold that they were bad as answers to the entire complaint; besides, it is made apparent by the special finding of the facts, that all the matters relied on as defences by these paragraphs of answers were in evidence at the trial under some other paragraph of the same pleading, and hence, conceding that the demurrers were, as an abstract proposition, erroneously sustained to the paragraphs of answer in question, no real injury resulted to the defendants from the decisions of the circuit court in that respect.

But it is contended, that independently of all questions presented by, or argued upon, the pleadings, the defendants were entitled to judgment on the special finding of the facts, upon the ground that the settlement found to have been made between Hunt and the board of commissioners constituted an adjudication upon, and a release of the defendants from all further liability on account of the matters embraced within

such settlement, and that the liability thus released was not reinstated by the subsequent action of the board setting aside their order accepting and approving the settlement.

The county commissioners have power, amongst other things, " to audit the accounts of all officers having the care, management, collection, or disbursement of any money belonging to the county, or appropriated for its benefit." 1 R. S. 1876, p. 353; R. S. 1881, section 5745.

It is also provided that "The treasurer shall annually make complete settlement with the board of county commissioners, at the regular June term thereof, and shall, at the expiration of his term, deliver to his successor all public money, books and papers in his possession." 1 R. S. 1876, p. 906, section 13; R. S. 1881, section 5925.

As an examination of the various statutes bearing upon the subject will disclose, the boards of commissioners have large powers in reference to the business affairs of their respective counties. In addition to the power to audit the accounts of all officers having the care and management of the money belonging to the counties, they have a general control of the property of the various counties, allow accounts, direct the raising of sums of money to pay expenses and discharge many other duties specifically enjoined upon them by law. They have, therefore, inferentially, power to bind the counties in making settlements with officers having charge of county money or county funds. *Board, etc.,* v. *Saunders,* 17 Ind. 437. The power, however, exercised in making such settlements is of a ministerial, rather than of a judicial character. In the discharge of that class of duties, the commissioners not only act as the agents and representatives of their counties, but, in a certain sense, as co-trustees, with the officers in question, in the management of the county finances, and whatever they may agree to, in making settlements with such officers, seemingly adverse to the interest of a particular county, stands simply upon the footing of an admission by, and not as a conclusive adjudication against, the county.

Wait's Actions and Defenses, in treating upon accounts *stated* and the general effect of the mutual *settlement* of accounts, gives the following as a summary of the authorities upon the subject: " To entitle a plaintiff to recover it has been held sufficient if he prove the account stated, and this was formerly conclusive. *Bartlett* v. *Emery*, 1 Term R. 42, note. But in modern times a greater latitude has prevailed, and errors which may have crept into the account, may now be shown and corrected. *Ib. Holmes* v. *D'Camp*, 1 Johns. 36 ; *Wilson* v. *Wilson*, 14 Com. B. (5 J. Scott) 626 ; *Thomas' Adm'r* v. *Hawkes*, 8 M. & W. 140. An account *stated* or *settled* is a mere admission that the account is correct. It is not an estoppel. The account is still open to impeachment for mistakes or errors. Its effect is to establish, *prima facie,* the accuracy of the items without other proof; and the party seeking to impeach it is bound to show affirmatively the mistake or error alleged. The force of the admission, and the strength of the evidence which will be necessary to overcome it, will depend upon the circumstances of the case. An account stated, which is shown to have been examined by both parties, and expressly assented to or signed by them, would afford stronger evidence of the correctness of its items than if it merely appeared that it had been delivered to the party, or sent by mail, and acquiesced in for a sufficient length of time to entitle it to be considered as an account *stated. Lockwood* v. *Thorne*, 18 N. Y. (4 Smith) 285, 292 ; *Champion* v. *Joslyn*, 44 N. Y. (5 Hand) 653. So, too, an account *settled,* that is, when the balance it exhibits has been paid or adjusted between the parties, is stronger evidence and requires more proof to overcome it than a mere account *stated.* But the parties are never precluded from giving evidence to impeach the account, unless the case is brought within the principle of an *estoppel in pais,* or of an obligatory agreement between the parties; as for instance where, upon a settlement, mutual compromises are made." 1 Wait Actions and Defenses, 195.

The annual settlements required to be made by county

treasurers, evidently involve nothing more than the presentation of full and correct exhibits by such treasurers of their receipts and disbursements during the preceding year, accompanied by suitable recapitulations and explanations, giving information in detail as to the various funds which have passed through or yet remain in their hands, and an examination and approval of such exhibits by the proper boards of commissioners. If a treasurer shall be entitled to a specific allowance to be placed to his credit in his annual settlement, such allowance should precede, and be distinct from, the action of the commissioners upon his annual settlement sheet.

The power exercised in making specific allowances against a county, and in deciding upon separate and particular questions involving judicial or *quasi*–judicial discretion is different from that exercised by county commissioners in supervising the annual accounts of a county treasurer, consisting of numerous and incongruous items, and submitted as an account stated for their approval or rejection. This distinction is clearly recognized by the recent case of *Wolfe* v. *State, ex rel.,* 90 Ind. 16.

The inference, therefore, appears to us to be obvious that the annual settlement of a county treasurer, with the county commissioners, as to its conclusiveness, ought to rest, and does in fact rest, upon substantially the same basis as that occupied by formal settlements made by private parties having mutual dealings, and presumably representing adverse interests, and hence that the doctrine as stated by Wait, *supra,* is applicable to the annual settlement of a county treasurer.

Certainly no stronger presumptions ought to be indulged in favor of county treasurers than may be invoked for the protection of private parties acting in a fiduciary capacity when making settlements, not constituting, either in whole or in part, a judicial proceeding. The case of *Board, etc.,* v. *Saunders, supra,* has been sometimes referred to as holding that the annual settlement of the commissioners with the treasurer was conclusive upon the county, and the act of March, 31st,

1879, having relation to such settlements was passed seemingly upon that assumption ; but we do not think that case ought to be construed as holding that such a settlement was conclusive in the sense in which an adjudication is conclusive, or in any other sense which would protect the treasurer against liability for fraud or mistake in making the settlement.

The same section of the statute which required and still requires county treasurers to make annual settlements with the commissioners of their counties, also provides that such treasurers shall, at the end of their respective terms, deliver to their successors all public moneys in their possession. The obligation upon county treasurers to pay over all public moneys in their hands is thus made a continuous obligation, and no previous fraudulent or mistaken settlement with the commissioners can be made effective as a discharge from that obligation.   *Halbert* v. *State, ex rel.*, 22 Ind. 125.

By section 177 of the act of December 21st, 1872, herein above cited, it was enacted that "Whenever it shall appear to.the board doing county business in any of the counties of this State, that by reason of erroneous charges on the tax duplicate, or from any other cause, the treasurer of such county has paid and accounted to said board for more money than was justly due from him on account of county revenue, said board doing county business shall direct the auditor to credit said treasurer with the sum or sums thus improperly paid, and order the same to be refunded from the county treasury."

Section 178 of the same act made provision for the repayment to county treasurers of taxes erroneously paid by them, under similar circumstances, into the State treasury.

The Revised Statutes of 1881 contained substantially similar provisions.   R. S. 1881, sections 6510, 6511.

It follows that the annual settlement of a county treasurer is not, and certainly since the act of December 21st, 1872, went into force has not been, conclusive against him, and, recognizing that as a correct legal conclusion, we know of no

principle upon which it can be adjudged that such a settlement is nevertheless conclusive upon the county. One of the essential features of an estoppel is that it must be mutual, and this element of mutuality is plainly wanting in the annual settlement of a county treasurer.

The case of *Washington County* v. *Parlier,* in the State of Illinois, reported in 5 Gilman, 232, was an action against a collector of revenue for failing to pay over an alleged amount of public money still remaining in his hands. In defence the collector introduced in evidence the record of a settlement made by him with the commissioners of his county showing, upon an account stated, a balance due him from the county, and the circuit court held the record to be conclusive against the county.

Upon appeal the Supreme Court of that State said : " In making this settlement, the commissioners act as the agents of the county, and do not adjudicate as a court. They could enter up no judgment against the defendant for the balance found due, nor have they any means of enforcing payment of such balance, except by a resort to the ordinary courts of law. As the fiscal agents of the county, their mistakes may be enquired into and corrected as well as those of an individual acting in his own behalf. The record of this settlement is but a memorandum of the transaction, and is only *prima facie* evidence of the correctness of the result stated."

The rule of the construction thus announced by the Supreme Court of Illinois is supported by apparently well considered cases in other States. *Supervisors* v. *Birdsall,* 4 Wend. 453 ; *People, ex rel.,* v. *Supervisors,* 65 N. Y. 222 ; *Supervisors* v. *Jones,* 19 Wis. 61 ; *County of Marion* v. *Phillips,* 45 Mo. (4 Post) 75 ; *State* v. *Roberts,* 62 Mo. (21 Post) 388 ; *Howe* v. *State,* 53 Miss. 57.

Our holding as to the inconclusive character of the annual settlement of a county treasurer dispenses with the necessity of considering some other questions incidentally discussed by counsel.

If there shall be any seeming inconsistency between this case and some cases previously decided by this court, it will be found, on examination, to result from a failure to note carefully the distinction between the mere examination and approval of an account stated by a county treasurer, and the decision of a question by county commissioners in a matter possessing the essential attributes of an adversary proceeding. *Board, etc.,* v. *Bradley,* 53 Ind. 422; *State, ex rel.,* v. *Benson,* 70 Ind. 481; *Heagy* v. *State, ex rel.,* 85 Ind. 260.

The judgment is affirmed, with costs.

ELLIOTT, J., did not participate in the decision of this cause.

Filed Jan. 30, 1884.