Rogers *et al. v.* The State, *ex rel.* Grimes, Auditor.

---

No. 10,542.

Rogers et al. *v.* The State, ex rel. Grimes, Auditor.

County Treasurer.—*Liability of Sureties on Bond.*—Where a county treasurer is elected his own successor, his sureties for the first term are liable for any defalcation existing at the end of that term.

Same.—*Defalcation.—Application of Payments.*—A county treasurer, having served two successive terms, was a defaulter at the end of each, and afterwards made payments upon the aggregate without any designation as to their application by any one. Some such payments were derived, 1. From loans and investments of the moneys for which he was in default. 2. From sources having no connection with the office. The sureties on both bonds were equally solvent.

*Held,* in a suit on the first bond, that the court should apply payments from the funds of the first class to the defalcation of the term from the moneys of which the loans and investments were made, and those of the second class to the defalcation of the first term.

Same.—*Settlements.—Pleading.*—To a suit on a county treasurer's bond an answer that at the close of his term he had accounted for all moneys to, and settled with, the county board, is bad on demurrer.

Same.—*Payment.—Reply.—Harmless Error.*—To an answer of payment to a complaint on a county treasurer's bond, a reply that such payment was made out of money coming to the officer as such, during a succeeding term of office, is bad; but it is a harmless error to hold it good on demurrer if it appears by the record that there was no evidence whatever offered in its support, and a finding in answer to interrogatories showing that it was not true.

---

Rogers *et al. v.* The State, *ex rel.* Grimes, Auditor.

SAME.—*Evidence.—Settlements of County Treasurer.—Harmless Error.*—In a suit on a county treasurer's first bond, the refusal to admit in evidence his annual settlements during his succeeding term of office is a harmless error where it appears that their admission could not have changed the result.

SAME.—*Parol Testimony as to Contents of Books of Account.*—Competent witnesses who have examined a county treasurer's books may testify to the amount of the treasurer's receipts and disbursements, as they appear by the books.

PRACTICE.—*Amendment. — Reswearing Jury.*—An amendment of pleadings upon the trial, unless it appears that the issues were changed thereby, does not make it necessary to reswear the jury.

SAME.—*Argument of Counsel.*—In a civil case the court may forbid the argument of a question of law before the jury, there being no controversy as to the facts upon which the question arises.

SAME.—*Supreme Court.—Excessive Damages.*—The Supreme Court will not reverse for excessive damages given by general verdict, nor for erroneous instructions concerning the subject of damages and inducing the excess, if in answer to interrogatories the jury has found all the facts, so that the proper damages can be computed, but will affirm on condition that the appellee remit the excess.

From the Superior Court of Vigo County.

*W. E. McLean, N. G. Buff, I. N. Pierce* and *D. T. Morgan,* for appellants.

*C. F. McNutt,* for appellee.

HAMMOND, J.—The appellant Rogers was treasurer of Vigo county for two terms. His first term was from August 21st, 1877, to August 21st, 1879, and his second from the latter date to August 21st, 1881. This was a suit against him and his sureties, the appellants herein, upon the bond given for his first term. The breach assigned was that at the close of his first term Rogers was a defaulter, and failed to account for and turn over to himself, as his own successor in office, a large sum of money, to wit, $25,000, with which he was then chargeable as such treasurer. Issues were formed, which were tried by a jury, and a general verdict was returned for the appellee in the sum of $10,856.53. With their general verdict the jury also, in answer to interrogatories submitted to them by the court at the request of the parties, found spe-

cially upon all the important questions of fact involved in the case, about which there was any controversy. The interrogatories submitted at the request of the appellee, and the answers of the jury thereto, were as follows:

"1. What amount did Rogers fail to pay over to himself, as his own successor, on the 22d day of August, 1879? Answer. Twenty-eight thousand nine hundred and eighty-four dollars ($28,984).

"2. What amount of the moneys loaned by said Rogers during the first term has been collected by him and turned back into the treasury since the end of said first term? Ans. Eleven thousand six hundred and ninety-four dollars ($11,694).

"3. What amount of interest earned by moneys in his hands, as treasurer, during the first term, has been collected by him since the end of said term and turned into the treasury? Ans. One thousand six hundred and fifty-four dollars and fifty-three cents.

"4. What amount of moneys of the first term did Rogers put into the lands sold to Beach, Shannon *et al.*, and in the improvements on said lands? Ans. Sixty-three hundred dollars ($6,300).

"5. What amount of moneys derived from the second term did Rogers put into the purchase and improvement of said lands sold to Beach, Shannon *et al.*? Ans. Fifty-nine hundred and four dollars ($5,904).

"6. What amount of money did the said Rogers put into the improvements or purchase of said lands so sold, which was not derived from either term of said office? Ans. Eight hundred dollars ($800).

"7. For what sum was the lands sold to Beach, Shannon, *et al.*? Ans. Ten thousand dollars ($10,000).

"8. Was the money for which said land sold to Beach, Shannon *et al.*, paid over to Ray, the successor of Rogers, after Rogers went out of office? Ans. Yes.

"9. From what source did the said Rogers derive the $1,250 paid over to Ray as his successor, after he, Rogers,

Rogers *et al. v.* The State, *ex rel.* Grimes, Auditor.

went out of office? Ans. Rents of farms, mostly his wife's land.

"10. What consideration did Rogers pay his wife for the $4,000, to raise which she mortgaged her separate property? Ans. He assigned and transferred to her his interest in the firm of Snapp & Rogers, in lumber, etc., business.

"11. What amount of money did Rogers pay into the firm of Snapp & Rogers. Ans. $3,854.

"12. From what source did said Rogers obtain or derive the money which he put into the partnership of Snapp & Rogers, and when did he put said money into said partnership? Ans. He checked on his account in bank, which was in the name of 'Newton Rogers, treasurer.' He so paid said money, a small part of it in February, and the balance in May, 1881.

"13. Did the said Rogers pay over to his successor Ray, and at what time, the $4,000 which his, Roger's, wife raised by mortgage upon her real estate, and mentioned in interrogatory No. 10? Ans. He did pay it to Ray, his successor, and so paid it on the 20th day of October, 1881."

The interrogatories submitted at the request of the appellants and the answers thereto by the jury were as follows:

"1. Was there any defalcation on account of Rogers' second term? Answer. Yes.

"3. When did said defalcation occur, if any? Ans. When he went out of office, on the 22d day of August, 1881, and in failing to pay over to his successor the full amount of money with which he was chargeable.

"4. What was the amount of such defalcation, if any? Ans. The total amount of the defalcation at the end of the last term, including that of the first term, was, on the 22d day of August, 1881, $34,771.73.

"5. What amount did Rogers pay or put into the treasury on account of his salary and fees during the second term, derived from the second term? Ans. $15,000.

"6. What amount did Rogers pay into the treasury during

the second term from the interest on loans during such second term? Ans. Twenty-six hundred and twenty-five ($2,-625) dollars."

The appellants moved for judgment in their favor upon the special findings of fact, which was overruled, and judgment was rendered for the appellee for the amount named in the general verdict, over the appellants' motion for a new trial.

That the sureties on the first bond of Rogers were responsible for the defalcation, if any, which occurred during or at the close of the first term, is quite well settled. *Ohning* v. *City of Evansville*, 66 Ind. 59; *Yost* v. *State, ex rel.*, 80 Ind. 350. Where an officer is elected his own successor, giving a bond for each term, it is but just and equitable that the sureties on each bond should be held responsible for the proper application of the public money of the term for which the bond was given, and nothing more.

A county treasurer is required to execute a bond to the acceptance of the board of county commissioners. Section 5911, R. S. 1881. Every official bond given by an officer is obligatory upon him and his sureties for the faithful discharge of all duties required of such officer by any law in force at, or subsequent to, the time of its execution. Section 5528, R. S. 1881. It is the duty of a county treasurer at the expiration of his term of office to deliver to his successor in office all public money with which he is then chargeable. Section 5925, R. S. 1881. Where an officer, intrusted with public funds, is elected his own successor, it is as much his duty, at the close of his first term, to have on hands to pay to himself as his own successor the moneys for which he is then officially accountable, as it would be to have the same in readiness to pay another who might be chosen as such successor.

The case of *Goodwine* v. *State, ex rel.*, 81 Ind. 109, was an action upon the official bond, executed for his second term, of a township trustee who was elected as his own successor. The special findings of fact showed that at the end of his first term he was chargeable with $2,246.41 which he had invested in

cattle and stock, and that during his second term he received from such investment $2,400. At the close of his second term he failed to pay to his successor $1,163.24 for which he was liable by virtue of his office. The sureties on the second bond insisted that the defalcation occurred during the first term. This court, speaking by Woods, J., said : " The facts found by the court show that Thomas " (the trustee) " became a defaulter in his prior term of office—not because he invested money received from public sources in his private business, for that he had a right to do, so long as he kept himself ready to pay out according to law all sums required for public use. *Linville* v. *Leininger*, 72 Ind. 491, and cases cited; *Bocard* v. *State, ex rel.*, 79 Ind. 270; *Brown* v. *State, ex rel.*, 78 Ind. 239. But because, at the end of his term, he did not have in his hands to turn over, and did not turn over, to his successor (himself), the amount for which he was then accountable. And had he never made good this defalcation, his prior bondsmen, and not the appellants, would have been responsible therefor. He did, however, make it good, as the facts show. By the sale of his property, he obtained money and replaced that for which he was in default, and when he did this, the appellants " (sureties on the second bond) " became liable therefor, as much as if another had been his predecessor in the office, and that other had been in like default and had afterwards made it good by payment to Thomas of the amount due."

The evidence without conflict fully sustained the special finding of the jury, that Rogers, at the close of his first term, was in default in the sum of $28,984, by reason of not having that amount ready to pay to himself as his own successor. He was also a defaulter for his second term, and the principal controversy arises over the application of the credits to which he was entitled according to the special findings. It does not appear from the special findings, nor from the evidence, that when, during the second term, he received money which was derived from the first term or from any other source, he manifested or had any intention as to the applica-

tion of such money, whether upon the liability of his first or second term. Nor do the findings or evidence show that when, after the close of his second term, he made payments to his successor in office, he gave any direction as to the application of such payments, or that any such application was specially made by the officer succeeding him, or by the county board. We do not decide whether such officer or county board could have made such application so as to bind the sureties of either bond, but simply state the absence of a fact which does not enter into the complications of the case. The application of the credits, under the special findings of fact, became a question of law. The appellants, who are the sureties on the first bond, insisted in the court below, as they do in this court, that the credits should have been applied to the extinguishing of the liability of the first term before any application thereof should have been made to that of the second term. It will be observed from the special findings that the moneys entering into the credits were derived in specified sums from loans or investments made during each term of the office, and also from sources disconnected with either term. The court below held that the money, when received from either term, should be applied to the deficit of the term from which it was derived, and, where it came from other sources, that it should be applied *pro rata* on the liability of each term. As to the application upon the liability of each term of the money derived therefrom, the decision of the trial court was based upon principles of equity and was sustained by authority. *United States* v. *Irving,* 1 How. 250; *Rochester* v. *Randall,* 105 Mass. 295 (8 Am. R. 519).

But as to moneys for which Rogers was entitled to credit and which were not derived from either term of his office, there are no equitable principles requiring its application to the liability of one term more than the other, or *pro rata* upon both terms, and its application should be governed by the rule of law applicable in such case. This rule, as stated by FRAZER, J., who spoke for the court in *King* v. *Andrews,*

30 Ind. 429, is as follows: "When a person owes upon several distinct accounts, he has a right to direct his payments to be applied to either, as he chooses; but if he pays generally, then the creditor may apply as he elects; and if neither makes a specific application, then the court will usually make the application, first to the most precarious security, or to the oldest debt."

The evidence does not disclose that the security of either bond is doubtful, and they are, therefore, both presumed to be good. It follows that, under the rule above announced, which has often been approved by this court, moneys not derived from either term, to which Rogers is entitled to credit, should be applied to the liability of the first term, as the older debt. Under this view, the credits on such first liability should be as follows:

Money loaned during first and collected during
second term . . . . . . . . . . . . . . . . $11,694 00
Interest collected during second term on loans
made during first term . . . . . . . . . . . 1,654 53
Proportionate amount of credit from the payment
of $10,000, derived from sale of real estate . 5,459 28
Payment of money derived from neither term . 1,250 00

Total credits on first term . . . . . . . . $20,057 81
Deducting these credits from the $28,984, the
amount of the default of the first term, leaves
as the principal sum due from that term . . . $8,926 19
To this add interest . . . . . . . . . . . . . 300 00
Also statutory penalty of 10 per cent. . . . . . 912 61

Amount due at date of judgment, April 1st, 1882 . $10,138 80

By this exhibit the judgment below was for $717.73 in excess of the amount which the appellee should have recovered.

A demurrer was sustained to a paragraph of appellants' answer, which alleged that Rogers, after entering upon his second term, fully accounted to and settled with the county board

for all moneys for which he was accountable at the close of his first term. There was no error in sustaining this demurrer. Such settlements at most are only *prima facie* evidence. *Hunt* v. *State, ex rel.*, 93 Ind. 311. While they might have shown that Rogers, in his second term, had charged himself with the amount for which he was responsible at the end of his first term, it is not alleged, nor is it presumed, that they did show that he, in fact, had such amount ready in money at the commencement of his second term to pay to himself as his own successor.

The appellants also filed pleas of payment, to which the appellee replied by way of confession and avoidance, alleging that such payments were made for moneys derived by Rogers from the second term of his office. We think the demurrer which was filed to this reply should have been sustained. The technical legal title to the money, which Rogers received by virtue of his office, was in him. *Linville* v. *Leininger*, 72 Ind. 491. And if he used money derived from the second term to the payment of his liability of the first term, the loss, if any, would fall upon the sureties of the second bond. *Cook* v. *State, ex rel.*, 13 Ind. 154. But it turned out in evidence that Rogers did not specifically apply any of the credits with which he was entitled either to his first or second term liability. The law, therefore, under the special findings of facts, makes the application of these credits, and as it is manifest that such application is in no way affected by the reply in question, it follows that the overruling of the demurrer thereto was a harmless error.

After the jury was sworn and some evidence had been introduced by the appellee, the court permitted the latter to file an amended third paragraph of reply, and the trial proceeded without the jury being resworn. The third paragraph of the reply, as it stood prior to the amendment, is not in the record by bill of exceptions or order of court. The amendment carried it out of the record. 1 Works Pr., section 711. And a bill of exceptions or an order of court was necessary to

bring it back into the record. An amendment may be made to a pleading within the discretion of the court after the trial has begun. Where such amendment does not change the issues, it is not necessary to reswear the jury. *Knowles* v. *Rexroth*, 67 Ind. 59. As the record does not disclose in what respect the amended third paragraph of reply differed from the paragraph of which it became a substitute, we are not able to say that the court abused its discretion in permitting it to be filed, or that it made any change in the issues.

The appellants, in their motion for a new trial, assigned as various causes therefor the exclusion of evidence offered to be introduced by a number of witnesses who are named. We fail, however, to find from the record that the evidence referred to was excluded. On the contrary, it appears to have been admitted.

The appellants offered, but were not permitted, to introduce in evidence the annual settlements made by Rogers with the county board during his second term, namely, in June, 1880, and June, 1881. These, as already observed, would have tended to show that he charged himself in his second term with the amount for which he was liable at the close of his first, but they would not have shown, nor have been any evidence, that at the end of his first term he had on hands, to pay to himself as his own successor, the amount for which the evidence and the special finding of the jury establish that he was then in default. We can not see how it is possible that the introduction in evidence of the annual settlements made with the county board during Rogers' second term could have changed the result of the trial. These would. not have shown, nor tended to show, that the amount for which he was accountable and in default at the close. of his first term was less than that found by the jury in answer to the interrogatory addressed to them upon that point. It is therefore manifest that the exclusion of these settlements as evidence was harmless, in view of the circumstances of the case.

Appellants complain that one of their counsel, in his ar-

gument to the jury, was not permitted to discuss how the payment of $4,000 made by Rogers to his successor should be applied. But there being no question in controversy as to the source from which the money came with which such payment was made, its application was simply a question of law, the argument of which should have been to the court, and not to the jury.

For the purpose of showing the amount of Rogers' liability at the close of his first term, appellee introduced in evidence his last settlement in that term made with the county board in June, 1879. This showed the balance for which he was then accountable. To this was added his subsequent receipts, less disbursements, up to the close of his first term, on August 21st, 1879. The amounts of such subsequent receipts and disbursements were shown by the evidence of competent witnesses from an examination of the treasurer's books. This evidence was objected to. We think that it was properly received. Had all the records, from which the witnesses obtained the facts to which they testified, been put in evidence, they would have served rather to confuse than to enlighten a jury. The evidence of competent witnesses who had examined the records, and who were able to give the jury an intelligible explanation of them, served a much better and satisfactory purpose than would the records themselves, if put in evidence. Such evidence of witnesses can not be regarded as contradicting the record. It simply presents so much of the record as is pertinent, in a shape to be easily understood and comprehended. Witnesses so testifying, to give their evidence weight, should be prepared to corroborate every statement by references to the records, in the presence of the jury, whenever either party desires it either in the examination or cross-examination of such witnesses.

The giving of certain instructions and the refusal to give others were assigned as causes for a new trial.

We think there was error in some of the instructions given with regard to the application of credits, but as the jury in

answer to interrogatories found the facts specially, the error may be corrected without necessarily reversing the judgment. As already seen, the judgment, based on the general verdict, was for $717.73 more than it should have been.

Our conclusion is, and it is so ordered, that if the appellee shall, within sixty days, remit said sum of $717.73, as of the date of the judgment, April 1st, 1882, the judgment will be affirmed, otherwise reversed, at appellee's costs.

