[No. 1775.]

THE ROCKFORD INSURANCE COMPANY v. ROGERS ET AL.

1. PRINCIPAL AND AGENT — AGENT'S SECURITY BOND — LIABILITY OF SURETIES.

In an action upon the security bond of an insurance agent conditioned that he should pay over to the company all moneys collected by him for the company, where it appears that the agent did remit to the company all the money collected during the term of the bond, the fact that the agent had formerly done business for the company and at the time of the execution of the bond owed the company a balance, and that the company without any direction to that effect from the agent applied part of the money received from the agent during the term of the bond to the payment of the back indebtedness, leaving an apparent deficiency during the term of the bond, would not make the sureties liable. And the fact that the moneys received for plaintiff company as well as moneys received for other insurance companies were deposited with moneys received by the agent from all sources into one general fund which he used as he needed it, either to remit to plaintiff or to pay private debts, would not affect the liability of the sureties. If the money was remitted to the company, from whatever source, in the course of the current business, it was the right of the sureties that it should be credited upon that business.

*Appeal from the District Court of Arapahoe County.*

Mr. C. J. BLAKENEY and Mr. B. M. MALONE, for appellant.

Messrs. ROGERS & STAIR and Messrs. WELLS & TAYLOR, for appellees.

THOMSON, J.

This is a suit on a bond executed by William H. Wells and the appellees as his sureties, to the appellant, the Rockford Insurance Company. Mr. Wells had been appointed by the company as its agent for the city of Denver, and the conditions of the bond were that he would make true records and regular reports of all business done by him as agent; keep true and correct accounts of moneys and other securities received by him as agent, and pay over the same to the company monthly, or oftener if demanded; and that at the end of his agency he would pay at once all moneys due. The date of the bond was March 15, 1892. The agency commenced on the same day, and was terminated on the 13th day of April, 1893. On the 15th day of June, 1893, Mr. Wells died. The breach alleged was the failure of Mr. Wells to pay over the moneys received by him for the company during the months of February and March, 1893.

The plaintiff introduced reports by Mr. Wells for February and March, 1893, certain statements accompanying the reports, and entries from its agent's account book. This evidence showed no remittances for those months. The defendants introduced copies of the plaintiff's books of account with Mr. Wells, covering a period commencing in September, 1891, and ending in January, 1893. They also proved a payment to the company by a Mr. Frick, in behalf of Mr. Wells who was sick, made on June 6, 1893, of $129.24 in full of the balance due for April, 1893. These books showed that Mr. Wells made remittances to the company every month during the period of his agency, including the months of February and March, 1893. The accounts for those months, as they appear on the books of the company, exhibited no credits; nevertheless, the books, elsewhere, showed payments of money during those months. It appears from the books that for a considerable time prior to March 15, 1892, Mr. Wells sustained business relations, of some kind, to the company. Whether he was then its sole agent, as the plaintiff claims,

or the company was represented by a copartnership of which he was a member, styled the People's Fire Insurance Agency, as the defendants undertook to show, is immaterial. The company kept its accounts during that time with Mr. Wells, and not with the Fire Insurance Agency; and we may concede the plaintiff's contention that he was its sole representative. An examination of the entries during his former agency discloses that no remittance by Mr. Wells during the period commencing on March 15, 1892, was credited to him as of the month in which it was made; but that each was entered in the account belonging to some preceding month. Upon the account for December, 1891, he is credited with a remittance of $399.64, made on the 12th day of May, 1892. The account for January, 1892, shows $318.69 sent by him on April 4, 1892. Minute details are needless. It is sufficient to say that each account, from September, 1891, to January, 1893, contains an entry of money received in some subsequent month. During March, 1893, one of the months for which a default is charged against Mr. Wells, he made payments aggregating $825.04, with $574.31 of which he was credited in the November, 1892, account, and with the remainder of which, $251.73, he was credited in the account for the December following. This last account also shows a remittance by him of $600 in February, 1893, the other month for which it is alleged he made no return. Upon the face of the company's books, the total amount which it received from Mr. Wells after March 15, 1892, was considerably in excess of the total amount with which he was chargeable during the period of the agency commencing on that day.

The only witness for the plaintiff was its president, John Lake. He testified to an indebtedness of Mr. Wells to the company for February and March, 1893, of $927.62, and, in support of his statements, exhibited the reports and accounts for those months. He said nothing about the other accounts in which the payments made during the same months were shown. How Mr. Wells should have made a large remittance

in a particular month, and yet be entitled to no credit upon the account entered for that month, or how the aggregate sum paid by him during the period of agency covered by the bond, should exceed his total liabilities incurred during the same period, and his sureties still be chargeable with a deficiency of $927.62, there is nothing in the evidence to explain. The solution of the difficulty proposed by the plaintiff's counsel is that Mr. Wells, during his former agency, failed to account for a portion of the company's money which came into his hands, and that, either by his direction, or, in the absence of his direction, in virtue of the legal right of the company to apply the money received by it to the discharge of the old indebtedness, the deficiencies in the former accounts were made good from the first moneys paid in under the new agency, and, hence, the remittance for each month appears in the account belonging to some previous month, and the months of February and March are left without any credit at all. This explanation has no basis either in fact or law. No direction by Mr. Wells was proven, and there was nothing in the evidence to authorize a court to say that he had ever failed to account for money in his hands belonging to the company. Respecting any previous default, Mr. Lake said not a word, and the extracts from the books which appear in the record are insufficient, alone, to establish an indebtedness.

But we may concede that Mr. Wells had incurred a prior liability, and there is still no case against these defendants. They were sureties upon a bond. Their undertaking is to be interpreted strictly, and their liability is not to be extended beyond the terms of their contract. *U. S. v. Boyd*, 15 Pet. 187; *Savings Bank v. Creigler*, 49 Mich. 157; *Bank v. Brennan*, 7 Colo. App. 427. They bound themselves for the payment by Mr. Wells to the company of all moneys which might be received by him as its agent. The condition of the bond was prospective, and subjected them to liability only in case of default occurring after the execution of the instrument. If Mr. Wells paid over to the company all moneys received by him after the date of the bond, he satisfied its

conditions. The application made of the money after the company received it, is immaterial. When it came into the hands of the company, the contract of the sureties was performed, and it was not in the power of the company to so apply the money as to deprive the sureties of the benefit of the payment. *Paw Paw v. Eggleston*, 25 Mich. 36; *U. S. v. Echford's Exrs.*, 1 How. 250; *U. S. v. Boyd*, 5 How. 29; *U. S. v. Girault*, 11 How. 22; *People v. Hammond*, 109 Cal. 384. See also, *Cook v. State*, 13 Ind. 154, and *County of Pine v. Willard*, 39 Minn. 125.

It was admitted at the trial that Mr. Wells was the agent for a number of companies, including this; that he deposited all money received by him from all sources to one account, and used it, as he needed it, to pay whatever he was obliged to pay, whether an obligation to an insurance company or a private debt; that the money remitted to the plaintiff was not the money received for premiums on its policies, and that portions of it were borrowed. An argument is built upon this admission which we do not quite understand. Mr. Wells was not required to send to the company the identical money received from premiums. For the money so received, he owed the company, and if he discharged the debt, the source from which the payment came is unimportant. He may have drawn the money from the consolidated fund into which his receipts from all sources went, or he may have taken it directly out of his pocket, or he may have borrowed it, but if it was sent to the company in the course of the current business, it was the right of the sureties that it should be credited upon that business.

We do not wish to be understood as saying that a state of facts might not exist, which, notwithstanding the remittances proven, would create a liability against the sureties. Mr. Wells might have converted to his own use the receipts from his second agency, and the payment of his old debt might have been an independent matter, wholly unconnected with the business he was then transacting. Such a situation would present a question which the record before us does not raise.

The burden of proving a breach of the conditions of this bond was upon the plaintiff. It was incumbent upon it to show that Mr. Wells failed to account for and pay over moneys received by him as agent during the term of agency covered by the bond, but there was nothing in the evidence to indicate that he withheld a dollar of those moneys. The proof all tended in a contrary direction. In our opinion the judgment below was right, and its affirmance is accordingly ordered.

*Affirmed.*