State, *ex rel.*, *v.* Indiana Board of Pharmacy.

THE STATE, EX REL. RHODES, *v.* THE INDIANA BOARD
OF PHARMACY.

[No. 19,426.   Filed November 15, 1900.]

APPEAL AND ERROR.—*Mandamus.*—*Alternative Writ.*—A judgment
on demurrer to an alternative writ of mandate will not be reversed
on appeal because the demurrer was addressed to the alternative
writ instead of the writ and petition, unless the facts exhibited in
the petition and alternative writ entitled the relator to the relief
sought.   *pp. 414, 415.*

DRUGGISTS.—*Licenses.*—*State Board of Pharmacy.*—*Mandamus.*—An
action in mandamus will not lie to compel the board of pharmacy
to issue an applicant a license without examination or diploma, under
the provision of the pharmacy act of 1899 (Acts 1899, p. 159), requir-
ing such board to issue a license to any person who at the time of the
taking effect of the act was the proprietor or manager of a store or
pharmacy in which physicians' prescriptions were compounded,
where the petition showed that the relator became the owner of the
pharmacy on June 19, 1899, since such act took effect April 27, 1899.
*pp. 415-417.*

From the Marion Superior Court.   *Affirmed.*

*Ignatius Brown, I. M. Holmes* and *L. M. Brown,* for
appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C.
C. Hadley,* for appellee.

BAKER, C. J.—On relator's petition an alternative writ
of mandate was issued to compel appellee to grant relator a
license as a registered pharmacist under the act of March 1,
1899 (Acts 1899, p. 159).   Appellee's demurrer to the alter-
native writ was sustained.   On relator's refusal to plead
further final judgment was rendered.   Sustaining the de-
murrer to the writ is assigned as error.

Relator first insists upon a reversal because the demurrer
was addressed to the alternative writ and not to the writ and
petition.   Even if relator were correct in urging that the
demurrer presented no question, the judgment would not
be reversed unless the facts exhibited in the petition and

alternative writ entitled relator to the relief sought. *Garrett* v. *Bissell Chilled Plow Works,* 154 Ind. 319.

Relator next contends that the facts required the court to order the issuance of a license to him. It is averred that on June 19, 1899, relator was over eighteen years of age and was the proprietor of a pharmacy in which physicians' prescriptions were compounded and sold; that on June 22, 1899, relator applied to appellee for a license as a registered pharmacist; that his application was made under the first qualification in section three of the pharmacy act which became a law by its terms on July 1, 1899; that he paid the fee prescribed in the act and demanded a license; and that appellee has failed and refused to issue him a license.

The first section of the act directs "That on the taking effect of this act the Governor of Indiana shall appoint five pharmacists  *  *  *  who shall constitute a board to be styled the Indiana Board of Pharmacy". The second section provides for the organization and meetings of the board. The third section, to the end of the first qualification, reads: "Upon the payment of such fee or fees as hereinafter provided, said board shall grant and issue a license as registered pharmacist, or as registered assistant pharmacist, to any person not less than eighteen years of age, as hereinafter provided, for two years or the unexpired portion thereof prior to the next regular date of re-registration, upon producing evidence satisfactory to said board of one of the following qualifications, to wit: For registered pharmacist. First. He shall, at the time of the taking effect of this act, be the proprietor or manager of a store or pharmacy in which physicians' prescriptions are compounded." The fourth, fifth, sixth and seventh sections relate to the fees to be paid by applicants for license, rules and regulations, and compensation of members of the board. The eighth section declares that "On and after July 1, 1899, it shall be unlawful for any person to con-

duct a store or pharmacy in which" etc., "unless there be in charge a registered pharmacist, or a registered assistant pharmacist, under the provisions of this act." The ninth and last section fixes the penalties for violations of section eight.

Article 4, §28, of the Constitution: "No act shall take effect until the same shall have been published and circulated in the several counties of this State by authority, except in case of emergency; which emergency shall be declared in the preamble or in the body of the law." Sections 238, 239 Burns 1894, §§238, 239 R. S. 1881 and Horner 1897: "It shall be the duty of the several clerks of circuit courts in this State, immediately on the receipt of the laws of any session, to transmit to the Governor a certificate stating the day when such laws are so received. So soon as certificates from all the counties have been received, the Governor shall issue and publish his proclamation, announcing the date at which the latest filing took place; of the facts contained in which proclamation all courts shall take notice." The pharmacy act did not contain an emergency clause. The Governor's proclamation, issued and published on April 27, 1899, announced that the latest filing occurred on April 27, 1899. Therefore, the law took effect on April 27, 1899, unless the act itself fixes a later date for that event. Under relator's petition and the alternative writ, showing that relator became the owner of a pharmacy on June 19, 1899, relator was not entitled to a license without examination or diploma, unless he was such owner before the law took effect. Relator contends that section eight fixes the date at July 1, 1899. This section merely provides that on and after July 1st it shall be unlawful to conduct a pharmacy without a license. One would naturally expect that, in view of section eight, the other parts of the act would afford pharmacists opportunity to put their businesses on a lawful basis by July 1st. And such is found to be the case. Section three contains this

provision: "All persons desiring registration without examination shall make application to the board prior to July 1, 1899." Section one directs the Governor to appoint the board "on the taking effect of this act". Section two allows fifteen days after appointment for the organization of the board. The contention that the board could not be appointed until July 1st and might take to July 15th to organize is inconsistent with the provisions requiring applications like the relator's to be filed with the board before July 1st and making it unlawful to conduct a pharmacy without a license on and after July 1st. The act took effect on April 27, 1899.

Judgment affirmed.