SUDBURY *v.* BOARD OF COMMISSIONERS OF MONROE COUNTY.

[No. 19,072.    Filed November 26, 1901.]

FEES AND SALARIES.—*Act of 1891.—Salary of County Treasurer.— Publication and Distribution of Acts.*—The fee and salary act of 1891 (Acts 1891, p. 424), provided that where a county officer had been elected before "the taking effect" of the act he should not be subject to the provisions thereof. As to county treasurers, this act was unconstitutional until amended by the act of 1893 (Acts 1893, p. 142). *Held,* in a construction of the act, that the words "taking effect" did not mean "become valid and operative" in all its parts, but referred to the taking effect upon its publication and distribution with other laws of the legislative session of 1891, and that the salary of a county treasurer elected after publication and distribution of the act of 1891, but before the amendment of 1893, was governed by the act of 1891. *pp. 449-452.*

Sudbury *v.* Board, etc.

COUNTY. — *Claims.* — *Allowance by Commissioners.* — In respect to claims against a county, the board of county commissioners acts in an administrative capacity, with power only to state the amount of legal claims chargeable against the county, and the finding of the board is but *prima facie* evidence of the correctness of the claim. *p. 453.*

SAME.—*Allowance by Commissioners of Illegal Claim to Treasurer.*— The allowance by a board of county commissioners to a county treasurer of salary and fees to which he was not legally entitled, but which was allowed under a statute which the commissioners thought to be in force, was not a voluntary payment under mistake of law, but was in legal effect a withholding of the county's money by the treasurer with the connivance of the board of commissioners. *pp. 453, 454.*

OFFICERS.—*Right to Office not Contractual.*—The right to public office is not contractual, and the rule of law that after a statute has been construed the construction becomes, as to contract rights, a part of the statute, is not applicable. *pp. 454-456.*

COUNTY.—*Recovery of Fees and Salary Improperly Allowed County Treasurer.*—County commissioners, in view of the decision of the Supreme Court holding the fee and salary act of 1891 unconstitutional as to county treasurers, made allowances to the treasurer in accordance with the prior act of 1879. Three months before the close of such treasurer's term of office the Supreme Court modified its former decision and held that the act of 1891, as amended by the act of 1893, was valid as to county treasurers, and the commissioners made settlement for the last three months in accordance with the act of 1891. *Held,* that the county in an action against the treasurer could recover the excess which was paid under the act of 1879 over that which should have been paid under the act of 1891. *pp. 454-457.*

SAME.—*Allowing Claim to County Treasurer.*—*Entry of Public Necessity.*—In an action to recover from an ex-county treasurer an excess of salary, where an answer alleged that the county commissioners had entered an order declaring that public necessity required the services of a treasurer, and thereafter all allowances should be made as a matter of indispensable necessity, but it was also alleged in the answer that the excessive payments were made under a statute which the commissioners thought to be in force, the payment was under the statute, and the public necessity order was no justification for the excessive payments, the reliance on the statute negativing the idea of public necessity. *pp. 454-457.*

APPEAL.—*Evidence.*—*Sufficiency.*—In an action to recover from an ex-county treasurer an excess of fees and salary, the want of evidence to support a finding that he was allowed a certain sum on a

certain date is not material, where it was admitted that upon final settlement the amount received by him exceeded that to which he was entitled by the amount represented by the judgment. *pp. 456-458.*

From Monroe Circuit Court; *W. H. Martin,* Judge.

Action by the board of commissioners of Monroe county against Tolbert H. Sudbury ex-county treasurer, to recover an excess of salary paid. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*H. A. Lee, L. M. Grimes, J. E. Henley* and *J. B. Wilson,* for appellant.

*H. C. Duncan* and *I. C. Batman,* for appellee.

HADLEY, J.—Appellant was elected treasurer of Monroe county at the November election, 1892, entered upon his office September 7, 1893, and continued therein to September 7, 1895. The fee and salary act of 1891 (Acts 1891, p. 434), fixed the salary of the treasurer of Monroe county at $1,800 per annum. The acts of 1879 (Acts 1879, p. 141), fixed the same at $800 and certain commissions. For the official year ending September 7, 1894, appellant presented to the board of commissioners of the county, each quarter, his verified account for salary as treasurer as follows: December 7, 1893, $450; March 7, 1894, $450; June 8, 1894, $450; September 8, 1894, $450, which was allowed and paid. Subsequently he presented and at the times noted was allowed and paid for official services the following sums: May 8, 1895, to commission on taxes from beginning of term to January 1, 1895, 1 per cent. and 6 per cent., $1,749; to commission on taxes collected from January 1, 1895, to May, 1895, $859; to salary for the first year, $800; to salary from September (December), 1894, to March 5, 1895, $400; total, $3,808. Credit by amount received from the county to date, $2,200. Balance due, $1,608, which balance was allowed and paid. June 3, 1895, to three months' salary, $200; to commissions for collecting $1,354, delinquent taxes since May settlement, 6 per cent., $81.25. And

on September 8, 1895 (at close of his term), he presented and was allowed on account of salary for quarter ending September 7, 1895, $450; on account of commission for collection of delinquent taxes since June, 1895, $163.95.

It is worthy of note that for the first year's services as treasurer appellant claimed and was allowed his salary under the act of 1891. On May 8, 1895, he receded from his claim and settlement for the first year, and then presented and was allowed his claim for all services rendered previous to that date, under the act of 1879. From June, 1895, to September, 1895 (the end of his term), he again claimed and was paid his compensation under the act of 1891.

This suit was instituted by appellee to recover from appellant the sums allowed him in excess of the amount to which he was entitled under the provisions of the act of 1891. The complaint is in two paragraphs. Appellant's demurrer to the second paragraph was overruled. Answer in five paragraphs. The first is a general denial. Appellee's separate demurrer to each the second, third, fourth, and fifth paragraphs was sustained. Trial by the court. Special finding of facts, the substance of which is set forth above. Finding and judgment for appellee. Appellant's motion for a new trial was overruled. Error is assigned upon all adverse rulings.

The complaint proceeds upon the theory that appellant was entitled to such compensation only as was provided by the act of 1891, and that the sum received in excess of that amount is recoverable under §6549 Burns 1901. Appellant vigorously assails the act of 1891, and the amendatory act of February 25, 1893 (Acts 1893, p. 142), as being in contravention of §22, article 4, of the State Constitution, which forbids local and special legislation for the regulation of county officers' compensation. His objections, however, have all been fully considered in the previous decisions of this court, and the views heretofore announced must now be

regarded as the settled law upon the question involved. *Harmon* v. *Board, etc.,* 153 Ind. 68; *Legler* v. *Paine,* 147 Ind. 181; *Walsh* v. *State, ex rel.,* 142 Ind. 357; *State, ex rel.,* v. *Krost,* 140 Ind. 41; *Henderson* v. *State, ex rel.,* 137 Ind. 552, 24 L. R. A. 469.

It is also argued that, conceding the act of February 25, 1893, amending §93 of the act of 1891, rendering the latter act constitutional and valid as to county treasurers, from and after the taking effect of the amendment (as held in the Walsh case), it does not affect appellant, for the reason that he was elected to his office before the act of 1891 became a valid law as to county treasurers, and that by the terms of §136 the same does not apply to him. This question becomes of importance because of the peculiar language of §136 of the act of 1891, viz.: "Where any clerk, auditor, recorder, treasurer, or sheriff has been elected by the people of his county before the taking effect of this act, such officer so elected during the time that he holds such term shall not be subject to the provisions of this act. He shall hold such term of office and perform the duties thereof and receive the compensation prescribed by the law the same as if this act had not passed." There being no emergency clause in the act of 1891, and none in the amendatory act of 1893, this court knows judicially that the former act went into force June 3, 1891, and the latter May 18, 1893. 1 Burns 1901, p. 96.

Appellant was elected in November, 1892, took his office in September, 1893, and left it in September, 1895. It may be well to observe that appellant was elected *after* the session laws of 1891, of which the particular act in question was a part, had taken effect, and that the amendment of February, 1893, was also in full force when he entered into his office.

The solution of the question must turn upon the meaning of the words "before the taking effect of this act." If these words mean that the act of 1891 shall not affect any clerk, auditor, treasurer, etc., who was elected at any time before

the provisions in regard to the compensation of his particular office had become valid and operative, the question is with the appellant, because under the decision in the Walsh case the act of 1891 was not valid and operative against treasurers until from and after May 18, 1893, which was subsequent to his election; but if it should be held that the words were used in a technical sense, and refer to the taking effect of the act as an entirety upon its "publication and circulation" with the other laws of the session of 1891 as provided by §28, article 4, of the Constitution, then there is no just basis for appellant's contention. The language of the Constitution is: "No act shall take effect until the same shall have been published and circulated in the several counties of this State by authority, except in case of emergency; which shall be declared in the preamble or in the body of the law." But for this provision, legislation would be valid and binding immediately upon its passage and approval by the Governor, or its passage over the Governor's veto. It was adopted obviously for the purpose of giving notice to the people of the State before exacting obedience to new laws by suspending the operation of such laws until they could be printed and deposited in places accessible to the citizens of the several counties. It is a method of giving effect to legislation required by the Constitution, and the only method in the absence of a declared emergency, and of which the lawmakers must take notice in framing an act.

It will not do to say that within the meaning of the Constitution an act may go into effect by piecemeal. There is no warrant for more than a single distribution and publication by authority, and no other means, in the absence of an emergency, to give effect to legislation. Under the Constitution, "except in emergency cases, a law takes effect from the time of its distribution by authority in all counties of the State." *State, ex rel.,* v. *Bailey,* 16 Ind. 46, 79 Am. Dec. 405; *Dowdell* v. *State,* 58 Ind. 333, 336; *State, ex rel.,* v. *Board of Pharmacy,* 155 Ind. 414, 416.

The publication of an act in the constitutional mode, and

the taking effect thereof, are concurrent acts, and *eo instanti* the particular legislation has all the force and virtue of law it ever attains in the form of its enactment. Its application to persons and things may not be uniform as to time, but the status of all subjects affected is fixed, to be operated upon at the time and in the manner prescribed by the law.

It can not be doubted that the legislature intended to make the act of 1891 affect all county officers named, and to make §136 apply impartially to such clerks, auditors, recorders, treasurers, and sheriffs as had, at the time of the passage of the act, been elected by the people, counting upon the emoluments as fixed by law at the time of their election. There is manifest equity in providing, as was done, that those who had been induced to become candidates for office, and who had incurred the labor and expense of a campaign, relying upon the compensation fixed by existing laws, should not be subjected to a change in the law which was supposed materially to reduce that compensation. This consideration, however, could only relate to those who stood elected at the time the law was changed, or supposed to be changed; surely not to those who became candidates and were elected after the change was attempted, but who from inadvertence or misprision were not brought within the provisions of the new law for two years afterwards. This latter class could not have been in the mind of the lawmakers when §136 was framed. It must therefore be held that the words "before the taking effect of this act" as employed in §136 of the act of 1891 were used in their technical sense, and had reference to the time when the particular act, as enacted, should be distributed by authority to the several counties of the State. This we have seen was on June 3, 1891, and §136, in legal effect, is the same as if it read: Where any * * * treasurer * * * has been elected by the people of his county before June 3, 1891, such officer shall not be subject to the provisions of this act.

When appellant entered into his office, the amendment of February, 1893, had taken effect, and at that time the act

of 1891 stood as if the infirmity of §93 had never existed, and it is by this law that the full measure of his compensation, as treasurer, must be computed.

(2) It is also claimed that the complaint is insufficient for the additional reason that it shows that appellant's claim, upon due presentation to the board of commissioners, was, upon consideration, allowed, and that such allowance being unchallenged by a taxpayer's appeal, the same is *res adjudicata,* and for the further reason, if the allowance was in fact erroneous, it was free from fraud and was a voluntary payment under a mistake of law.

In certain instances, not necessary to mention, boards of commissioners have such judicial powers as that their judgments are reviewable upon appeal only, and can not be collaterally attacked, but in respect to claims against a county, since the legislation of 1885 (Acts 1885, p. 80) it has been uniformly held that such boards act in an administrative capacity, in the nature of an auditing committee, with power only to state the amount of legal claims chargeable against the county, and whose finding is but *prima facie* evidence of the correctness of the claim. *Board, etc.,* v. *Heaston,* 144 Ind. 583, 55 Am. St. 192; *Bass Foundry, etc., Works* v. *Board, etc.,* 115 Ind. 234; *Board, etc.,* v. *Nichols,* 12 Ind. App. 315, 54 Am. St. 528; *Board, etc.,* v. *Stock,* 11 Ind. App. 167.

It is an essential condition precedent to the jurisdiction of circuit courts, that claims of every character against a county be first filed with the county auditor and presented to the board of commissioners; and if the claim is disallowed, in whole, or in part, the claimant has his option to appeal, or bring an original action in the circuit court against the county. §§7845, 7846, 7847, 7856 Burns 1901; *Myers* v. *Gibson,* 152 Ind. 500, and cases cited.

It follows from this that a claimant, who has failed before the board of commissioners, and brings his action in the circuit court for the same matters, cannot be defeated by setting up against him the conclusion of the commissioners,

call it what you may, and if he cannot be bound by the action of the board, surely the county, the other party to the controversy, cannot be. The effect of an adjudication must be mutual. "Both litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either." Freeman on Judgments (4th ed.) §189; *Simpson* v. *Pearson,* 31 Ind. 1.

The allowance of appellant's claim was not a voluntary payment under a mistake of law in the sense underlying the authorities cited by appellant. In fact it was not a payment at all by the county. The board of commissioners as agents of the county had no authority to permit appellant to retain as his own, or to allow him from the county treasury, moneys to which he was not legally entitled. Such boards may only do on behalf of the county such things as are expressly authorized by statute, and such as become essential to the performance of declared duties, which alone may arise by implication. *Board, etc.,* v. *Heaston,* 144 Ind. 583; *Myers* v. *Gibson, supra,* at p. 505.

The commissioners of Monroe county had no authority to allow appellant a claim not "chargeable against the county." §7830 Burns 1894. Their doing so did not bind the county. It was no allowance or payment by the county. In legal effect the transaction was a withholding of the county's money by the appellant, with the connivance of the men composing the board of commissioners. The complaint is sufficient.

(3) The second paragraph of answer sets up the allowance by the commissioners as an estoppel against the county. The third charges that by the terms of §136, acts 1891, the provisions of said act do not apply to him, and that he charged and received only the compensation allowed by the act of 1879. The questions arising upon the second and third paragraphs are ruled by what has been above decided with respect to the sufficiency of the complaint.

In the fourth and fifth paragraphs of answer, which are in substance the same, it is alleged that appellant paid all fees collected into the treasurer's fund, and made quarterly

reports; for more than a year he presented his claims under the law of 1879; part was allowed and the balance continued from term to term until the Supreme Court should rule upon the constitutional validity of the act of 1891, which was done November 27, 1894, adversely to the law in respect to county treasurers, in the case of *State, ex rel.,* v. *Boice,* 140 Ind. 506. After the ruling in the Boice case, and before the Supreme Court on June 22, 1895, in the case of *Walsh* v. *State, ex rel.,* 142 Ind. 357, 33 L. R. A. 392, held the act of 1891 as amended in February 1893 to be constitutional and valid, to wit, on May 8, 1895, relying on the decision in the Boice case, he filed and was allowed his claim for all previous services under the act of 1879. Before making this allowance the commissioners entered an order declaring that public necessity required the services of a county treasurer, and that thereafter all allowances made to the county treasurer should be made as a matter of indispensable necessity; the allowance made him was reasonable, made at a regular session of the board with full knowledge of the facts, is unappealed from, and was voluntarily paid.

Upon these answers it is argued that it was the duty of the commissioners to abide the decision of the Supreme Court, and as appellant's claim was allowed by the board in accordance with the interpretation of the act of 1891, given in the Boice case, it was a valid adjudication and settling of his rights with respect to compensation, accruing prior, and before the Boice case was overthrown; and that the contrary interpretation subsequently made in the Walsh case did not affect his rights vested under the former decision. In support of this contention appellant cites *Myers* v. *Boyd,* 144 Ind. 496, and *Stephenson* v. *Boody,* 139 Ind. 60. The rule declared in these cases and many others that might be added is perhaps nowhere denied, but it is not applicable here because of the absence of the principle upon which it rests. The rule as approved in these cases is "that, 'after a statute has been settled by judicial construction, the construction becomes, so far as *contract* rights acquired under

it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on *contracts* as an amendment of the law by means of a legislative enactment.' " But public office is not a contract; it is in the nature of a trust, or agency. *Coffin* v. *State, ex rel.,* 7 Ind. 157.

The distinction between a contract and a public office is marked. If the former is not fully executed, the delinquent is liable and must respond in damages; while in the latter, the officer may lay aside his office, by resignation, at pleasure, and with it all further liability. For fifty-five years it has been held in this State that a county officer accepts his office subject to whatever regulations the legislature may afterwards make respecting it. New duties may be imposed upon an incumbent without additional compensation, and his compensation as fixed by law when elected may be either increased or decreased. It is settled that public office is accepted *cum onere. Gilbert* v. *Board, etc.,* 8 Blackf. 81; *Turpen* v. *Board, etc.,* 7 Ind. 172; *Walker* v. *Dunham,* 17 Ind. 483.

These answers do not count upon the public necessity order, for it is not claimed that any allowance was made appellant thereunder and it is expressly averred that the commissioners, believing him so entitled, paid him under the provisions of the act of 1879. If the act of 1879 authorized and measured his compensation, it is clear that there was no ground for a public necessity payment. §7853 Burns 1901, §5766 R. S. 1881 and Horner 1897.

We are not called upon to decide, and we do not decide, the effect upon an unchallenged allowance to a county treasurer, made upon final settlement of his accounts with the county, in the period intervening between the decisions in the Boice and Walsh cases, and which was according to the law as construed by the Supreme Court at the time of settlement, for in the special finding before us it is shown that the appellant remained in office for more than two months

after the ruling in the Walsh case affirming the validity of the act of 1891, as amended in February, 1893, and modifying the opinion in the Boice case, had been announced, and made a final settlement of his accounts with the board in the full light of that case, and when the subject of his compensation for official services for his entire term was before the board and open to adjustment in accordance with the late exposition of the law. At that time it was clearly the right and duty of both the claimant and commissioners to correct all mistakes that had been made in the treasurer's accounts under the law as then declared. §§7913, 8003 Burns 1901; *Board, etc., v. State, ex rel.,* 106 Ind. 270; *Board, etc., v. State, ex rel.,* 103 Ind. 497; *Rogers v. State, ex rel.,* 99 Ind. 218; *Hunt v. State, ex rel.,* 93 Ind. 311.

In the latter case it is said: "The obligation upon county treasurers to pay over all public moneys in their hands is thus made a continuous obligation, and no previous fraudulent or mistaken settlement with the commissioners can be made effective as a discharge from that obligation."

In September, 1895, appellant had already received $325.30 more than he was entitled to for his full term, but was then in the final settlement allowed and paid $613.95 additional. This last allowance was not due or owing from the county and the commissioners had no authority to make it. §6548 Burns 1901.

The demurrers to the several answers were properly sustained and the exceptions to the conclusions of law properly overruled.

(4) Numerous reasons for a new trial are assigned relating to the admission and exclusion of evidence, and the insufficiency of the evidence to sustain the finding; the chief insistence, and in fact the only point urged, being the total absence of evidence in support of the finding of an allowance of $200, on December 6, 1894; and that the total receipts of appellant for his full term were but $4,502, instead of $4,702, as found by the court.

There is no substance in the claim. The particular dates upon which allowances were made are of no consequence. The record shows that appellant in presenting his account for compensation to the board of commissioners on May 8, 1895, admitted that he had received from the county up to that date, $2,200; and it is admitted that he received at that date $1,608; and that subsequently he was allowed and paid the further sums, June 3, $281.25; September 6, 1895, $586.59; September 8, 1895, $26.60; making total receipts $4,702.44. He was entitled under the law to receive $3,763.19, leaving unaccounted for $939.25, which is the amount of the judgment. We find no error. Judgment affirmed.